NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

Eastern District of Kentucky
FILED

JUN - 7 2006

At Ashland
LESLIE G. WHITMER
Clerk, U.S. District Court

CIVIL ACTION NO. 06-CV-57-HRW

ROGER H. KORNEGAY                                    PETITIONER

VS:                **MEMORANDUM OPINION AND ORDER**

UNITED STATES PAROLE COMM'N, ET AL.                 RESPONDENTS

\*\*   \*\*   \*\*   \*\*   \*\*

Roger H. Kornegay, who is currently incarcerated in the Federal Correctional Institution

in Ashland, Kentucky ("FCI-Ashland"), has filed a *pro se* petition for writ of habeas corpus

pursuant to 28 U.S.C. §2241 [Record No. 8]. He has paid the $5.00 filing fee [Record No. 2].

This matter is now before the Court for screening. 28 U.S.C. §2243; *Demjanjuk v.*

*Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th

Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689

(1st Cir. 1970)).

This is a *pro se* petition and, as such, it is held to less stringent standards than those

drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519

(1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the

petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, under 28 U.S.C.

§1915(e)(2), a district court has the authority to dismiss a case at any time if it determines that

the action: (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

## CLAIMS

The petitioner challenges the manner in which the United States Parole Commission ("USPC") conducted his parole revocation hearing and the decision which the USPC reached. He alleges that because his parole revocation hearing was scheduled on short notice, he was denied due process due process of law in violation of the Fifth Amendment of the United States Constitution. The Petitioner further challenges the USPC's use of an "upward departure" from its established guidelines. As a result of the upward departure, the petitioner's sentence was extended by sixteen (16) months. He will remain in federal custody until his presumptive parole date of May 27, 2007.

## NAMED RESPONDENTS

The petitioner has named several respondents: (1) the USPC; (2) Brian Patton, the warden of FCI-Ashland; (3) Edward J. Reilly, Jr., Chairman of the USPC; (4) Patricia Vines, Case Analyst; (5) Phyllis Baker, USPC Hearing Examiner; (6) Cathryn A. Wyatt, whom he identifies as "Ashland FCI I. S.M."; (7) John Allen Legal Instruments Examiner; and (8) William S. Wallace, Unit Manager of FCI-Ashland.

## RELIEF REQUESTED

The petitioner seeks an order from this Court directing the BOP to reverse the USPC's decision and release him from custody.

### Petitioner's Criminal Conviction and USPC Detainer

2

The petitioner was convicted in the United States District Court for the Eastern District of Oklahoma, for interstate transportation and sale of a stolen farm tractor, a conviction which was affirmed on appeal, *United States v. Kornegay*, 885 F.2d 713 (10th Cir. 1989), *cert. denied*, 495 U.S. 935 (1990).

The petitioner states that in November, 2000, he was released on parole from "Butner LSCI."[1]   [*See* Record No.9, Affidavit, §1]   On May 22, 2002, he was arrested in Mississippi and charged with "Possession of Counterfeit Checks."   While the petitioner was in the county jail, the USPC lodged a detainer against him, charging that he had violated the conditions of his parole.   On January 30, 2003, the petitioner pled guilty to that offense (violation of 18 U.S.C. §513A) in the United States District Court for the Southern District of Mississippi at Jackson. *See United States v. Roger Kornegay*, No. 3:02-CR-085-WHB-1.

On February 6, 2003, Judgment was entered and the petitioner was sentenced to a term of 44 months' imprisonment and 3 years of supervised release.   Upon the petitioner's placement in the Bureau of Prisons' ("BOP") Ashland facility later in 2003, the USPC lodged the parole violator detainer with the BOP.

### PREVIOUS LITIGATION
### 1. The 2005 Petition

On September 20, 2005, Petitioner Kornegay filed a previous §2241 habeas corpus petition in this Court, being *Roger Glen Kornegay v. Terry O'Brien*, Ashland Civil Action No. 05-CV-155 (the undersigned, presiding) ("the 2005 Petition").   The petitioner originally asked the Court to order his warden, Terry O'Brien, and the USPC to conduct a parole revocation

---

[1]Presumably "LSCI" means "low security correctional institution."

3

hearing. The petitioner argued that if the USPC refused to conduct the hearing within the 90-day time period as provided in 28 C.F.R. §2.49(f), he was entitled to be released to begin his three-year period of supervised release.

In the 2005 Petition, the petitioner alleged that he sought and was granted court-appointed counsel to represent him before the Commission. He attached a copy of an Order appointing counsel which this Court entered on January 5, 2004, in *In re: Parole Violator, Roger Glen Kornegay,* Misc. No. 04-01, United States District Court for the Eastern District of Kentucky, Ashland Division (the undersigned, presiding).

Petitioner argued that he had "expired the 44 month federal sentence from MS on July 29, 2005," but that Warden Terry O'Brien refused to release him. He alleged that in August, 2005, he had filed an Inmate Request to Staff, asking to be placed on FCI-Ashland's September parole hearing docket. He claimed that the USPC directed the warden to postpone scheduling a parole revocation hearing. The petitioner then filed the 2005 Petition.

## 2. October 18, 2005 Dismissal

On October 18, 2005, the Court entered a Memorandum Opinion and Order dismissing the 2005 Petition, which decision is reported at 2005 WL 3003094. The grounds for the dismissal were that the petitioner had failed to demonstrate exhaustion of his administrative remedies. Specifically, he had not filed an appeal with the National Appeals Board as required by 28 C.F.R. §2.26.[2] The Court dismissed the 2005 Petition without prejudice to the petitioner's filing another §2241 petition after exhaustion.

## 3. Motion for Reconsideration

---

2

The Court noted in that Order that the 90 days for holding a revocation hearing had not yet expired.

4

The petitioner filed a motion seeking reconsideration of the dismissal, acknowledging that he had not provided the Court with evidence of administrative exhaustion. He attached to his motion the USPC's "Notice of Action" ("NOA") letter dated June 1, 2004, which advised him that the USPC had decided to let its detainer stand. The decision was not appealable. He also attached the USPC's warrant, marked as having been executed on July 29, 2005.

The petitioner argued that 18 U.S.C. §4208(b) entitled him to thirty days' notice of the hearing. He argued that since his revocation should have been conducted on or before October 29, 2005, he should have received notice thereof by September 29, 2005. He argued that because he had not received notice, the hearing could not be held within the statutory 90-day period. He stated that the USPC did not provide him with any administrative remedies through which he could have demanded the timely revocation hearing.

The petitioner supplemented his motion for reconsideration while it was before the Court. He described a series of events which occurred at the prison as the October 29th deadline for the revocation hearing approached. With only 3 days' notice and no opportunity to meet with an attorney, on October 27, 2005, he stated that his appointed attorney appeared for the revocation hearing. They were granted a 5-minute break in which to consult and then the hearing proceeded, with the Hearing Examiner's purported admission that the hearing was being conducted "on the 90th day and at the last minute."

The petitioner alleged that if he had been provided appropriate notice and access to his attorney, he would have had time to review the evidence and prepare for the hearing and he would have received a more favorable outcome. In light of the alleged violation of federal

5

statutes and the unfairness, he asked the Court to bar the USPC's decision and allow him to proceed to supervised release status.

### 4. November 9, 2005 Order Denying Rule 59(e) Relief

On November 9, 2005, the Court entered a Memorandum Opinion and Order denying the petitioner's motion for reconsideration. [*See* 05-CV-155-HRW, Mem., Op.& Ord., Record No.9] The Court concluded that "Even were the Court to reconsider the dismissal and consider the instant petition with the new information, the petitioner would still not be entitled to habeas relief. . . ." [*Id.* p.3]. The Court explained its decision as follows:

> "[A] parolee is not entitled to habeas corpus relief when the Commission has failed to hold the revocation hearing within the statutory time limits, *unless* he can show both unreasonable delay and prejudice severe enough to render the revocation hearing inadequate." *Northington v. United Stqtes Parole Commission,* 587 F.2d 2 (6th Cir. 1978) (emphasis added); *Simulis v. Edwards,* 779 F.2d 52, 1985 WL 13858 (6th Cir. 1985) (unpublished) (same); *Taylor v. Ruffino,* 1994 WL 84932 (6th Cir. 1994) (unpublished) (same); *Prince v. Straub,* 78 Fed. Appx. 440 (6th Cir. 2003) (unpublished) (same), *cert. denied,* 540 U.S. 115 (2004).

> The instant petitioner, therefore, is not entitled to an earlier release via a grant of a petition for writ of habeas corpus, because he has not shown a delay that was unreasonable and, most importantly, he has not shown how he was prejudiced. In fact, although he claims the result of the hearing could have been better, he has not even revealed the result. The petitioner may not even know yet, if the Commission has not issued its Notice of Action. When he is informed of the Commission's decision, the Notice will tell him about his appeal rights. If he is permitted an appeal to the National Appeals Board, he must await its decision before the matter is justiciable in federal court.

> As this Court informed Mr. Kornegay in its Order dismissing the instant cause of action, a habeas petitioner must exhaust his administrative remedies prior to filing a federal lawsuit. And one of the reasons for the exhaustion requirement is the preparation of a record for the Court's review. The instant petitioner still has not presented a complete record, since it lacks what the Commission decided, what the basis for that decision was, and whether the National Appeals Board found the decision appropriate.

The Court will therefore deny the petitioner's motion to reconsider its earlier dismissal, but will point out again that the dismissal was without prejudice to his right to bring a later action in federal court, after the matter is exhausted administratively.

[*Id.*, pp.3 -4, (Bold Emphasis Added)].

### 5.  December 5, 2005 Order Denying "Motion to Reopen"

The petitioner filed another motion for the Court to reconsider its dismissal of the 2005 Petition, again updating the Court on his parole revocation proceedings.  The petitioner stated that after his October 27, 2005 USPC hearing, the hearing examiner told him that she would recommend revocation of parole with a re-parole date of 16 months over the top of the guidelines of 33-44 months, thus making his re-parole date May 21, 2007.[3]  The petitioner asked the Court to reopen his cause and intervene so that he could be released as early as January of 2006.

On December 5, 2005, the Court entered an Order denying that motion, emphasizing that the USPC had not issued a dispositive NOA letter. Because the administrative appeal process had not fully run its course, the Court refused to address the merits of the §2241 petition..

### CURRENT §2241 PETITION
### 1.  November 22, 2005 Notice of Action Letter

There have been some factual developments since the Court dismissed the 2005 Petition. The Court will list the most relevant ones. The petitioner has provided the Court with a copy of the NOA Letter which the USPC issued on November 22, 2005. In it, the USPC determined that none of the time which the petitioner had spent on parole would be credited to his sentence. The USPC ordered a presumptive re-parole date of May 21, 2007, after 60 months of service.

---

[3]

As of the date the petitioner signed that motion (November 20, 2005), the 21-day period for the USPC to issue a NOA, notifying the petitioner of its decision, had passed without the petitioner having received a "Notice of Action" letter.

7

Under the "Findings of Fact" section of the NOA Letter, the USPC found the petitioner guilty of: (1) "Leaving the District Without Permission"[4] and (2) "Law Violation - Possession of Counter Corporate Checks."[5] With regard to a third charge, that of "Failure to Report Change in Residence," the USPC made no finding, concluding that there was insufficient evidence upon which to base a finding on that issue.

The NOA letter states that as of October 21, 2005, the petitioner had been in federal confinement, as a result of his federal parole violation, for a total of forty (40) months.[6] The USPC noted in the letter that its Guidelines indicated a customary range of 34-44 months to be served before release. The USPC determined, however, that an upward adjustment of the petitioner's term of imprisonment was warranted, based on a review of all relevant factors and available information. The USPC noted that the petitioner's offense behavior is rated as Category Four severity because it involved fraud in excess of $40,000.00 but less than $200,000.00, and that the petitioner's salient factor score (SFS-98) is "3."

The USPC decided that because the petitioner was a more serious risk than indicated by the guidelines, a departure above the Guidelines was warranted. The USPC explained its decision as follows:

---

[4]

The USPC stated that its basis for that finding was "Testimony pertaining to outside of the district during the hearing."

[5]

The USPC stated that its basis for that finding was that on January 30, 2003, the petitioner had been convicted in the United States District Court for the Southern District of Mississippi (Docket No. 03:02crBN-001) for "Possession of Counterfeit Checks."

[6] Over seven more months have now passed.

8

> . . .you have a history of repetitive sophisticated criminal behavior that shows
> organized scheme of Larceny involving the Transportation and Selling of Equipment
> valued in excess of Over $15,000.00 and Less than $35,000.00.  In addition to your
> history of sophisticated Larceny Offense, the current offense involved associating
> with Known Felons and Theft of Other's Identification in Order to Create a New
> Identity for Yourself."

[NOA Letter, November 21, 2005].

The result of the increase is that the petitioner must serve 60 months of his parole

violation term, instead of 34-44 months.  According to the NOA letter, the petitioner's

presumptive parole date is May 21, 2007.

## 2. National Appeals Board Disposition

The petitioner appealed the USPC's decision to the National Appeals Board ("the

Board").  By NOA letter dated February 10, 2006, the Board affirmed the USPC's decision.  The

Board rejected the petitioner's contention that because the USPC had failed to give him timely

notice of the parole hearing, it had violated 18 U.S.C. §4208(b).  The Board responded  that

§4208 applied only to parole *determination* proceedings, not parole *revocation* hearings.

The Board dismissed the petitioner's claim that he was deprived of adequate time in

which to prepare for the hearing. The Board noted that Petitioner had already been convicted in

a federal court of possession of counterfeit checks while on parole release, outside of his district

of supervision, and that the conviction was for the same offense charged in the parole revocation

proceeding.  The Board further pointed out that because the petitioner had been convicted of an

offense which he committed while on parole, he was entitled only to an institutional revocation

hearing, rather than a local revocation hearing.

The Board emphasized that because of the preclusive effect of the federal conviction for

possession of counterfeit checks,  the petitioner was not entitled:  (1) to call adverse witnesses

at his institutional hearing; (2) to receive advance notice from the USPC that it intended to depart upward from the Guidelines; or (3) to make a statement at the hearing.

The Board next rejected the petitioner's claim that the USPC denied him due process of law by departing upward from the Guidelines, noting the petitioner's history of "organized schemes of larceny." The Board recounted the petitioner's criminal history dating back to 1987, which history includes larceny, theft by deception, sale of stolen motor vehicles at auction, bank fraud involving counterfeit checks, and the petitioner's most recent conviction, possession of counterfeit checks while on parole release. The Board concluded that the petitioner provided "no significant mitigating circumstances sufficient to merit a different decision".

### 3.  Amended §2241 Petition

The amended petition, filed herein on May 23, 2006 [Record No. 8] and affidavit [Record No. 9] are essentially a continuation of the facts and claims against the USPC which he had raised in the 2005 Petition. As he did in the 2005 Petition, the petitioner asserts that the USPC violated his Fifth Amendment right to due process of law in numerous instances. The main complaints are that the USPC waited one day too long to conduct the hearing and that once a hearing date was belatedly scheduled, he did not have adequate time in which to prepare for the hearing. The petitioner raised these complaints previously in his two post-judgment motions filed in the 2005 Petition. The petitioner asserts in his current §2241 petition that the USPC violated his due process rights in fifteen different ways. Grouping similar claims together, the Court has summarized the grounds of petition as follows:

(1)     failing to properly execute and serve the parole violation warrant on July 29,

10

2005, essentially arguing that because he (petitioner) did not sign and date the warrant at the bottom of the document;

(2)    unduly delaying his parole revocation until October 27, 2005, which he describes as the 91st day after he was served with the parole violator warrant;

(3)    failing to provide him with adequate notice and opportunity under §4208(b) to prepare for the parole revocation hearing;

(4)    failing to inform him of the charges and possible consequences, and failing to release to him in advance all documents which it intended to use against him;

(5)    not allowing him to have assistance of counsel at the parole revocation hearing;

(6)    denying him an opportunity to respond to the USPC's proof and to offer various forms of mitigating evidence;[7]

(7)    not allowing him to call his own witnesses or to cross-examine adverse witnesses;

(8)    issuing a decision lacking in a rational basis and factual accuracy;

(9)    departing upward from the Guidelines by sixteen (16) months;

(10)   retaliating against him for exercising his First Amendment rights by filing the 2005 Petition; and

(11)   violating the Ex Post Facto provision of the United Sates Constitution.

DISCUSSION
1. Standard of Review

---

[7]

The petitioner wanted to argue that in reference to his criminal counterfeit check conviction in federal court in Mississippi, he should have been able to submit proof to the USPC of only actual losses, not potential losses.

The Court notes that its scope of review over a decision by the USPC is extremely limited. The USPC is "vested with the broadest discretion consistent with due process to act upon reliable evidence in revoking parole." *Taylor v. United States Parole Commission*, 734 F.2d 1152, 1155 (6th Cir.1984) (quoting *United States ex rel. Sperling v. Fitzpatrick*, 426 F.2d 1161, 1163 (2d Cir.1970). Consequently, while the USPC may revoke an inmate's parole only upon a finding by a preponderance of the evidence that the parolee violated a condition of his parole, the Court's review is limited to determining whether the Commission abused its discretion in making such a finding. *Taylor*, 734 F.3d 1155; 18 U.S.C. §§4214(d), 4218(d).

An abuse of discretion is created by a clear error of judgment. *Id.* Essentially, only a rational basis for a decision of the USPC must exist. *See Kimberlin v. White*, 7 F.3d 527, 533 (6th Cir.1993); *Hackett v. United States Parole Comm'n*, 851 F.2d 127, 129-30 (6th Cir.1987) (per curiam). Neither the USPC's findings of fact nor its credibility determinations are subject to review. *See Farkas v. United States*, 744 F.2d 37, 38-39 (6th Cir.1984); *Persico v. Gluch*, 948 F.2d 1289, 1991 WL 246972 (6th Cir. 1991) (unpublished opinion). With that in mind, the Court will address the arguments.

## 2. Due Process Claims (Grounds 1-8)

The petitioner's due process claims (Grounds 1-8, *supra*) lack merit. Parole revocation proceedings are not criminal trials. *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593 (1972). While the Due Process Clause imposes limits on the procedures used to revoke parole and entitles parolees to certain rights, *see, e.g., Black v. Romano*, 471 U.S. 606, 610 (1985); *Moody v. Daggett*, 429 U.S. 78, 85-86 (1976), the limitations and the rights are not coextensive

12

with those applicable in criminal trials, *see*, *e.g.*, *Gagnon v. Scarpelli*, 411 U.S. 778, 787-790;

93 S. Ct. 1756 (1973); *Maddox v. Elzie*, 238 F.3d 437, 445 (D.C. Cir.2001).

The USPC has the authority to make its own independent findings of criminal behavior

regardless of the disposition of a defendant's criminal charge. *Whitehead v. United States Parole*

*Commission*, 755 F.2d 1536, 1537 (11th Cir.1985). "Under 18 U.S.C. §4214(d), the

Commission need only determine that a preponderance of the evidence supports the parole

violation, while the criminal proceeding requires proof beyond a reasonable doubt." *Id.*

*Standlee v. Rhay*, 557 F.2d 1303, 1305-07 (9th Cir.1977); *Mack v. McCune*, 551 F.2d 251, 254

(10th Cir.1977).

Here, Petitioner Kornegay was not only convicted of possession of counterfeit checks

while on parole release, he *pled guilty* to that offense on November 12, 2002, in the federal court

in Mississippi. Under the  preponderance of the evidence standard, the petitioner's guilty plea

and conviction would clearly establish that he committed a parole violation. While it is true that

the petitioner did not admit *to the USPC* during his revocation hearing that he had committed

the offense of possession of counterfeit checks while on parole release, his guilty plea in the

Mississippi federal court effectively precludes his arguments here.

What Petitioner Kornegay fails to realize is that even if he had been *acquitted* of the

possession of counterfeit check offense in the United States District Court for the Southern

District of Mississippi at Jackson, the USPC could have still determined that under the

preponderance of the evidence standard, the petitioner had violated the terms of his parole

release. In *Rivera v. United States*, 25 F.3d 1053, 1994 WL 198784, **4-*5 (7th Cir.(Ill.)),

prisoner Rivera claimed that the USPC could not rely on local criminal charges that did not result

13

in a conviction as a basis for revoking the terms of his special release. The Seventh Circuit disagreed, stating, "To the contrary, the Commission has the authority to make its own independent findings of criminal behavior *regardless* of the disposition of defendant's criminal charge. *Rivera*, 1994 WL 198784, at \*\*4-\*\*5 (Emphasis added).

The Eleventh Circuit came to the same conclusion in *Whitehead v. U.S. Parole Com'n.*, 755 F.2d at 1537, when it stated that "Second, even if there had been an acquittal on the criminal charge, the conduct can be the basis of parole revocation. Under 18 U.S.C.A. §4214(d), the Commission need only determine that a preponderance of the evidence supports the parole violation, while the criminal proceeding requires proof beyond a reasonable doubt." *Id. See also Perry v. United States Parole Commission*, 831 F.2d 811, 813 (8th Cir.1987) ("Moreover, a Commission's independent finding of a violation of the conditions of parole is unaffected by the dismissal of the state charge arising out of the same conduct."(citing *Mullen v. United States Parole Commission*, 756 F.2d 74, 75 (8th Cir.1985)).[8]

Despite Petitioner Kornegay's detailed listing of alleged numerous due process challenges to the manner in which his parole revocation hearing was either scheduled or conducted (such as insufficient notice; inability to prepare, call or cross examine witnesses), he should not be

---

8

*See also Murray v. Dove*, 82 F.3d 418, 1996 WL 185782, \*\*1 (6th Cir.(Ky. April 17, 1996)) (Unpublished Disposition) ("Murray's claim that the Parole Commission wrongfully revoked his mandatory release based on unreliable evidence as well as the dismissed harboring a fugitive criminal charge is without merit. The Parole Commission has the authority to make its own independent findings of criminal behavior regardless of the disposition of the defendant's criminal charge.").

14

allowed in this proceeding, to argue that he did not commit the counterfeit check offense. Petitioner's parole was revoked in compliance with due process.[9]

In his numerous filings in this action, the petitioner continues to dispute that he possessed counterfeit checks while on parole violation, in hopes that this Court will adopt a contrary view and reverse the outcome of his revocation hearing. That is not the role of this Court. *Farkas v. United States*, 744 F.2d at 38-39. Only if the USPC's decision was totally lacking in evidentiary support, or so irrational as to be fundamentally unfair, would parole revocation deny due process. *Duckett v. Quick*, 282 F.3d 844, 847 (D.C.Cir.), *cert. denied*, 537 U.S. 863, 123 S.Ct. 247, 154 L. Ed.2d 104 (2002). Given that relatively low threshold of proof, and the petitioner's guilty plea to the counterfeit check offense, Petitioner Kornegay's claims falter.

Petitioner also claims that the USPC's failure to conduct the hearing until October 27, 2005--91 days after he was served with the warrant on July 29, 2005--violated due process. A parolee has the right to a revocation hearing within a reasonable time after the parolee is taken into custody. *See Morrissey*, 408 U.S. at 488; *Ellis v. District of Columbia*, 84 F.3d 1413, 1421 (D.C.Cir.1996). Whether a delay violates due process depends on the length of and reasons for

---

[9]

The doctrine of collateral estoppel prevents parties from relitigating issues that they had a full and fair opportunity to litigate in another forum. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 467, 102 S. Ct. 1883, 72 L. Ed.2d 262 (1982). *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 n. 23, 99 S.Ct. 645 (1979) ("[T]he whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed."); *see also Detroit Police Officers Ass'n v. Young*, 824 F.2d 512, 515 (6th Cir.1987))."

The doctrine applies here. The petitioner pled guilty to the counterfeit check charge in one federal court, yet attempts in this Court to argue that the USPC erred by not releasing him. That attempt will not succeed, even under the guise of a long list of alleged due process violations. *See Sykes v. James*, 13 F.3d 515, 521 (2d Cir. 1993) (To extent that parolee's civil rights conspiracy claim against parole officer rested on contention that false testimony was presented at parole revocation hearing, parolee was collaterally estopped from pursuing that claim by unchallenged finding in previous §1983 action); *Hawkins v. Abramajtys*, 230 F.3d 1358, 2000 WL 1434695, **2 (6th Cir.(Mich.)) (same).

the delay. *See Ellis*, 84 F.3d at 1424. Delays of between 195 days and 33 months have been found to be unreasonable. *See Pate v. United States*, 277 F. Supp.2d 1, 5-6 (D.D.C.2003) (discussing cases). Here, the petitioner asserts that the USPC was one day late in scheduling his parole revocation hearing.

In *White v. United States Parole Commission*, 2205 WL 3555494 (D.D.C. December 23, 2005), the court was faced with a similar claim. White was arrested for the parole violations on May 19, 2005. The USPC held the revocation hearing on September 29, 2005. In rejecting White's claim that he had been prejudiced by delay, the court responded as follows:

> "Hence, petitioner was in custody over four months before he was afforded a revocation hearing. This delay arguably might be considered unreasonable. But even assuming that the delay was excessive, to obtain habeas relief petitioner must show that prejudice resulted from the delay. *See Sutherland v. McCall*, 709 F.2d 730, 732 (D.C.Cir.1983); *Allston* [*v. Gaines*], 158 F. Supp. 2d [76] at 81; *Crum v. U.S. Parole Comm'n*, 814 F. Supp. 1, 3 (D.D.C.1993). It is undisputed that petitioner had violated his parole. In fact, petitioner was found in violation of his parole based on his own admissions. . . .  Petitioner therefore has not demonstrated the requisite prejudice."

*White*, 2005 WL 3555494, *2.

Here, the delay in the hearing was one day, whereas in *White*, the district court did not find that a *one-month* delay (over the three-month time set by statute) resulted in a due process violation. In *White*, the petitioner had admitted to his parole violation and thus no prejudice was found as a result of the delay. Here, Petitioner Kornegay cannot establish that he was prejudiced by the delay because, as the Court has discussed, in 2002 he had previously pled guilty to the counterfeit check in the Mississippi federal court.

The case law requires a showing of prejudice resulting from delay. *See Taylor v. Ruffino*, No. 93-5993, 1994 WL 84932 (6th Cir. Mar. 11, 1994) (unpublished order) (habeas relief not

16

warranted where petitioner failed to show that revocation hearing delay actually prejudiced him); *Villarreal v. United States Parole Comm'n*, 985 F.2d 835, 837 (5th Cir.1993) (**154-day delay** between arrest and final hearing did not violate due process absent showing of prejudice); *Prince v. Straub*, 78 Fed. Appx. 440, \*442 (6th Cir (Mich.) September 12, 2003) (not selected for publication in the Federal Reporter); *Harris v. Day*, 649 F.2d 755, 761-62 (10th Cir.1981) (showing of prejudice required with delay in holding a parolee's parole revocation hearing after execution of a parole warrant.). Given the petitioner's guilty plea in 2002, he simply fails to demonstrate any prejudice as a result of the one-day delay.[10]

Next, although the petitioner alleges that the mechanics of the service of the warrant were deficient, the fact remains that the petitioner was well aware of the contents of the warrant. His claim of prejudice resulting from lack of notice is simply specious. His knowledge of the contents of the warrant is reflected in the detailed submissions and attachments he filed not only in this action, but in the 2005 Petition.

### 3. Upward Departure from the Guidelines (Ground 9)

With regard to the USPC's decision to extend the petitioner's term by sixteen months, the facts and case law support such a decision. Here, the USPC stated that the petitioner had a long criminal history, dating back to 1987, consisting of larceny, theft by deception, sale of stolen motor vehicles at auction, bank fraud involving counterfeit checks, and most recently, possession of counterfeit checks while on parole release.

---

[10]

As set forth previously herein, the Court has previously explained to the petitioner that he was required to demonstrate prejudice resulting from an alleged delay in the hearing process. *See* November 9, 2005 Mem. Op. & Order denying the petitioner's "Motion for Reconsideration" in the 2005 Petition.

17

In *Kimberlin v. White*, Kimberlin had been convicted of detonating a series of explosives. After filing his first §2241 petition challenging his placement in Offense Category 8, the highest possible Offense Category, his case was remanded to the USPC for consideration. *Id.* at 529. On remand, the USPC lowered Kimberlin's Offense Category to a 7 and assigned him a Salient Factor Score of "Good." *Id.* at 531. The parole guidelines recommended that such a prisoner be released after 64 to 92 months of incarceration, but the hearing examiners recommended departing upward to set a parole release date at 180 months. *Id.*

In his second §2241 petition, Kimberlin argued that the USPC did not state particular and sufficient reasons, as required by 18 U.S.C. §4206(c), to justify its upward departure from the recommended maximum of the Offense Category 7 guideline. The Sixth Circuit disagreed, finding that while the USPC's statement of reasons (the reference to multiple bombings) was brief, it satisfied the particularity required by §4206(c). *Kimberlin*, 7 F.3d at 533. The Sixth Circuit held that under the precedent established in *Farkas*, it did not have authority to review the substantive parole decision of the USPC, and that it could only review whether the factors the USPC cited were so "arbitrary, irrational, unreasonable, irrelevant or capricious" that they failed to constitute good cause. *Kimberlin*, 7 F.3d at 533 (citing *Hackett*, 851 F.2d at 131 and *Maddox v. United States Parole Comm'n*, 821 F.2d 997, 1000 (5th Cir.1987)). The Sixth Circuit upheld the departure. *Kimberlin*, 7 F.3d at 533.[11]

---

[11]

There is other persuasive authority in support of the upward adjustment. In *Persico v. Gluch*, 948 F.2d 1289, 1991 WL 246972 (6th Cir.(Mich.) November 25, 1991) (Unpublished Disposition), Persico claimed that the USPC lacked a rational basis for giving him a category seven offense severity rating and for exceeding the guideline range of 52-80 months. *Id.* at **3. He argued that the USPC "double counted," using the same offenses as an aggravating factor which were used initially to place him in a Category 7 rating. His Category 7 rating was based upon the gravity of his RICO convictions and the culpability of his co-conspirators for each others' acts, which included such multiple offenses as bribery, loansharking, and

In the instant proceeding, the Court determines that the USPC had "good cause" to depart upward from the Guidelines by sixteen months, given the petitioner's twenty-year criminal history. The factors which the USPC cited were not so "arbitrary, irrational, unreasonable, irrelevant or capricious" that they failed to constitute good cause for the upward departure.

### Retaliation Claim (Ground 10)

To the extent that the petitioner alleges that the USPC retaliated against him for filing the 2005 Petition, in violation of the First Amendment, he would be asserting a civil rights claim under 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). He would be required to assert such claims in a separate civil action. He is not entitled to assert a civil rights claim in a §2241 habeas corpus proceeding. The filing fee for a civil action is $350.00.

### *Ex Post Facto* Claim (Ground 11)

The petitioner states that the original crimes of which he was convicted occurred in April and May, 1987. The petitioner contends that by postponing his presumptive parole date by 16

---

extortion. *Id.*

Persico further claimed that the USPC relied on his top-level status in the Colombo organization in order to: (1) find him responsible for others' acts and (2) decide to exceed the guidelines. In rejecting Persico' challenge to his Offense Category 7 rating and to the upward departure, the Sixth Circuit affirmed the USPC's decision. The court stated that "Accepted principles of conspiracy law, and the government's detailed explanation of the Commission's calculations, prevail over Persico's charges." *Id.*

*See also Moore v. Gluch*, 885 F.2d 871, 1989 WL 109433, **1 (6th Cir.(Mich.) September 22, 1989) (Unpublished Disposition) in which the USPC advised Moore that due to aggravating factors his parole would be set at 90 months, rather than 52-64 months recommended by the sentencing guidelines. According to USPC, Moore had been involved in selling drugs to school children, and the total amount of drugs distributed exceeded 200,000 doses. Moore denied both allegations. Moore claimed that the USPC exceeded its authority by setting his parole outside the guidelines because the allegations were unproven and did not form the basis of the sentence. The district court upheld the USPC. On appeal, the Sixth Circuit affirmed, stating that "Factual findings of the Parole Commission cannot be disturbed. *See Farkas v. United States*, 744 F.2d 37, 39 (6th Cir.1984). The Parole Commission may consider any relevant evidence or information. *See* 18 U.S.C. § 4207." *Moore*, 1989 WL 109433, **1.

months, the USPC violated the Ex Post Facto Clause. He alleges that the USPC's decision was based upon the "good cause" provision of 18 U.S.C. §4206(c),[12] which provision is contained in the November 1, 1987 *amendment* to §235(b)(3). Petitioner argues that while the 1987 amendment authorizes the USPC to set release dates *outside* of the USPC's Guideline range for "good cause,"[13] it does not apply to prisoners like him who had committed their offenses prior to November 1, 1987. He argues that §235(b)(3) should only be applied to prisoners who had committed offenses after its enactment on November 1, 1987.

Petitioner Kornegay overlooks the fact that in 2002, he pled guilty to possession of counterfeit checks (while he was on parole release). It was the commission of *that offense* (and his resulting guilty plea) which caused him to be in federal custody when the USPC decided to postpone his release by sixteen months. The commission of the counterfeit check offense occurred long after the November 1, 1987 amendment to §235(b)(3). Thus, the USPC's decision to depart upward from the Guidelines did not violate the Ex Post Facto Clause.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

---

[12]

On December 7, 1987, section 235(b)(3) was amended to delete the clause requiring the Commission to set release dates *within* the guideline range. *See* Sentencing Act of 1987, Pub.L. 100-182, §2(b)(2), 101 Stat. 1266 (1987) (1987 amendment). The amended section 235(b)(3) requires the USPC to set release dates 'pursuant to section 4206 of Title 18 United States Code,' which permits release dates *outside* the Guideline range.

[13]

18 U.S.C. §4206(c) provides that:

The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: Provided, that the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.

(1)     The petitioner's "Motion to Amend" [Record No. 10] is **DENIED** as **MOOT**.

(2)     This action will be **DISMISSED WITH PREJUDICE**, *sua sponte,* from the docket of the Court.

(3)   Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent.

This June 6, 2006.

**Signed By:**
*Henry R Wilhoit Jr.*
**United States District Judge**

21